**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

GAYATRI SRINIVAS and AMY CISNEROZ, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

AMAZON.com, Inc.,

Defendant.

Case No.

**COMPLAINT—CLASS ACTION**

**JURY DEMAND**

CLASS ACTION COMPLAINT

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

Plaintiffs Gayatri Srinivas and Amy Cisneroz ("Plaintiffs"), on behalf of themselves and all others similarly situated, allege as follows:

## I.     INTRODUCTION

1.      Plaintiffs assert these claims on behalf of themselves and a class of female employees who experienced systemic discrimination by Defendant Amazon.com, Inc. ("Amazon" or "Defendant").

### A.     Summary of Claims

2.      Plaintiffs seek to represent a class of all women who worked for Amazon in Job Levels 4-8 ("Covered Positions") in Washington at any time from three years before the filing of the initial complaint through the resolution of this action (the "EPOA Liability Period" or "Washington Liability Period"), to challenge Amazon's failure to compensate women equally to similarly situated men and denying women the same advancement opportunities as men on the basis of gender (collectively, the "Washington Class").  Plaintiffs are members of the Class they seek to represent.

3.      This class action is brought against Defendant Amazon to challenge its systemic discrimination against its female employees.

4.      Throughout the period covered by this case and throughout its corporate workforce in Washington, Amazon has systematically paid women less than men performing substantially similar work and has limited women's employment opportunities on the basis of gender.

5.      Amazon accomplishes this unlawful discrimination by assigning women to lower-paying jobs and paying women less for the same jobs, despite similar qualifications and tenure.

6.      Amazon has developed a comprehensive, corporate-wide job classification system, reflected in its Leveling Guidelines, to define job roles and structure its job architecture

CLASS ACTION COMPLAINT                          Page 1                          OUTTEN & GOLDEN LLP
                                                                                1999 Harrison Street, Suite 1500
                                                                                Oakland, CA 94612
                                                                                (415) 638-8800

for its corporate employees.  Within that classification system, Amazon regularly assigns women to lower-paying, less favorable Job Codes and Job Families and assigns higher-paying Job Codes to men doing substantially similar work, with similar qualifications, experience, and tenure. Amazon also regularly segregates men and women by Job Code, assigning men to higher-paying "tech"-labeled positions and women to lower-paying equivalent positions labeled as non-"tech." Despite this Job Code segregation, Amazon assigns women to perform substantially similar work to men with equivalent Job Codes, often working side-by-side or on the same teams, with higher-paid men.  As a result, Amazon both underpays women and limits their career advancement opportunities based on gender.

7.    Amazon also underpays women by under-leveling them and paying them less than men within the same level.  Under Amazon's job classification system, it regularly assigns women to lower Job Levels than men, and, within the same Job Level, it pays women less than men.  Even where Amazon assigns men and women the same Job Code, which is purportedly a more refined indicator of an employee's work under Amazon's classification system, Amazon systematically pays women less than men within that same pay band.

8.    Amazon's failure to pay women and men equally for performing substantially similar work is not justified by any lawful reason.

9.    As described more fully below, Amazon's practice of paying women less than men doing substantially similar work is systematic, consistent, and pervasive throughout its corporate workforce.  The conduct complained of herein is referred to collectively as Amazon's "Compensation Practices."  Amazon's Compensation Practices are the result of policies and practices.

10.    Plaintiffs allege, on a class-wide basis, that Amazon has discriminated against them and all Washington Class Members by paying them less than comparable men and limiting

their and similarly situated women's career advancement opportunities on the basis of gender, in violation of the laws of Washington, specifically, the Washington Equal Pay and Opportunities Act, RCW 49.58.010 *et seq.* ("EPOA") (the "Class Claims").

11. Plaintiffs also allege, on an individual basis, that Amazon has discriminated against them by paying them each less than comparable men in violation of the Federal Equal Pay Act ("EPA"), 29 U.S.C. § 206 *et seq*.

**B.** **The Related *Wilmuth* Class Action**

12. Plaintiffs' class claims are premised on substantially the same facts and law as the Washington Class claims alleged in the related action, *Wilmuth et al. v. Amazon.com, Inc.*, No. 23 Civ. 01774.

13. Caroline Wilmuth, Erin Combs, and Katherine Schomer (the "*Wilmuth* Plaintiffs") retained Outten & Golden LLP ("Outten & Golden") to pursue pay discrimination and other claims against Amazon in 2023. The *Wilmuth* Plaintiffs, represented by Outten & Golden, filed the *Wilmuth* action in November 2023 after pre-suit settlement discussions proved unsuccessful. Over the next two and a half years, a team of ten attorneys (and numerous additional attorneys, staff, and internal data analysts) at Outten & Golden vigorously prosecuted the *Wilmuth* action on behalf of the three *Wilmuth* Plaintiffs and the proposed Washington Class, including by engaging in significant class-wide discovery that is currently scheduled to conclude on August 14, 2026. Last month, one of the Outten & Golden team members, Cassandra Lenning, left Outten & Golden to join a new law firm, Bibiyan Law Group, P.C. ("Bibiyan"). The *Wilmuth* Plaintiffs then retained Ms. Lenning and Bibiyan and terminated their representation by Outten & Golden.

14. Plaintiffs have retained Outten & Golden, the gender justice nonprofit advocacy organization Equal Rights Advocates ("ERA"), and Frank Freed Subit & Thomas LLP ("FFST"),

to represent them and the proposed Washington Class.  Outten & Golden is one of the most experienced and successful firms in the nation in litigating large, complex employment rights class actions on behalf of workers, including some of the largest and most complex pay discrimination cases on record.  ERA is one of the leading gender justice nonprofit organizations in the nation, engaging in policy reform, impact litigation, community outreach, and movement-building.  ERA has significant experience litigating equal pay discrimination claims.  In addition, ERA contributed substantially to the creation and passage of the California Fair Pay Act of 2015 and subsequent amendments to that law, and supported passage of the Washington Equal Pay and Opportunities Act, the New York Equal Pay Law, and other equal pay legislation.  FFST has decades of experience litigating individual discrimination claims under Washington and federal law in Washington federal and state courts.

15.     Plaintiffs bring this action to ensure continuity in the prosecution of the important Washington claims on behalf of many thousands of Amazon's female employees, given the unique value provided by the Outten & Golden team given their institutional knowledge developed over the past two and half years of litigation in the related *Wilmuth* action, as well as their expertise in the area and their partnership with ERA and FFST.

## II.     PARTIES

16.     Plaintiff **Gayatri Srinivas** is a woman residing in King County, Washington.  She started as an L5 Technical Writer in Amazon's Amazon Web Services ("AWS") organization in 2011 and was promoted to an L6 Senior Technical Writer in 2016.  In or around 2021, Plaintiff Srinivas became a "tech" classified L6 Technical Writer in the Technical Documentation job family.  She left Amazon in April 2025.

17.     Plaintiff **Amy Cisneroz** is a woman residing in King County, Washington.  She worked as an L7 Principal Product Manager within Amazon's Fashion and Personalization

CLASS ACTION COMPLAINT                    Page 4

organization between 2022 and 2024.

18.     Defendant **Amazon.com, Inc.** is a Delaware corporation headquartered in King County, Washington, and doing business throughout Washington State and the United States.

19.     Amazon is an "employer" subject to Washington statutes governing employment discrimination, retaliation, and equal pay, including the EPOA.

## III.    JURISDICTION AND VENUE

20.     This Court has original subject matter jurisdiction over the federal EPA claims pursuant to 28 U.S.C. § 1331 and Sections 206(d) of the Fair Labor Standards Act, 29 U.S.C. § 206(d).

21.     This Court has supplemental jurisdiction over the Washington state law claims under 28 U.S.C. § 1367, because they arise from a common nucleus of operative facts with the federal claims and are so related to the federal claims as to form part of the same case or controversy under Article III of the United States Constitution.

22.     This Court also has original jurisdiction over the class claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  This is a putative class action in which there are 100 or more members in the proposed Classes, at least some members of the proposed Classes have a different citizenship from Defendant, and the claims of the Classes exceed $5,000,000 in the aggregate.

23.     This Court has personal jurisdiction over Amazon because the company does business in this District and because some of the acts complained of, and giving rise to the claims alleged, occurred in and emanated from this District.

24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred in this District.

25.     Plaintiff Srinivas was a resident of King County, Washington throughout her

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

employment by Amazon.

26.     Amazon employed Plaintiff Srinivas in King County, Washington throughout her employment with Amazon.

27.     Plaintiff Cisneroz was a resident of King County, Washington throughout her employment by Amazon.

28.     Amazon employed Plaintiff Cisneroz in King County, Washington throughout her employment with Amazon.

29.     The events, acts, and omissions giving rise to Plaintiffs' claims alleged herein occurred primarily in King County, Washington.

30.     Any and all prerequisites to the filing of this suit have been met.

## IV.   <u>COMMON FACTUAL ALLEGATIONS</u>

### A.   <u>Under Amazon's Common Job Architecture, Amazon Assigns Women to Lower-Paying and Less Favorable Job Codes and Pays Women Less Within the Same Job Codes.</u>

31.     Amazon has systematically paid and continues to pay female employees lower compensation than it has paid and continues to pay men performing substantially similar work.

32.     As further described herein, Amazon has maintained and continues to maintain a centrally determined and uniformly applied job architecture, which uses a consistent framework throughout the corporate workforce to classify and compare jobs, including into Job Families, Job Levels, and Job Codes.  Under this common job architecture, Amazon labels certain Job Codes as "tech" positions and others as "non-tech," purportedly based on whether a job requires some minimal skill in technology, science, engineering, or math.  The "tech" labeling does not render the Job Code substantially dissimilar.  It does not correspond to any specific computer coding competency or function.  Within this job architecture, Amazon pays women less than men performing substantially similar work, including by assigning men to "tech"-labeled

CLASS ACTION COMPLAINT                    Page 6

positions, which are typically compensated at higher levels.

33.    While Amazon assigns women to lower-paying Job Codes throughout its corporate workforce, including in Washington, it still requires women to perform substantially similar work to men in higher-paying Job Codes, including "tech"-labeled jobs.

34.    As Plaintiffs experienced, Amazon even assigns women in non-"tech"-labeled positions and men in "tech"-labeled positions to perform substantially the same tasks on the same teams, and still pays women less for that work.  For example, Amazon assigned Plaintiff Cisneroz a non-technical Principal Product Manager job code, but Amazon assigned a man performing substantially similar work on her team and/or within her organization a Principal Product Manager-Technical job code.  Because Amazon provides for a significantly higher salary scale for technical Product Managers, like it does across the board for its "tech"-labeled positions versus non-"tech"-labeled positions—even at the same Job Level—Amazon paid Plaintiff Cisneroz less total compensation than her male counterpart.  Upon information and belief, female employees throughout Amazon are routinely assigned similar but lower-compensated Job Codes.

35.    As a direct result of assigning women to non-"tech"-labeled roles, Amazon also limits female employees' career advancement opportunities.  Amazon makes it challenging for women to transfer from a non-"tech" role into the more favorable and higher compensated equivalent "tech" roles.  Women's advancement opportunities at Amazon are thus frequently constrained by assignment to less favorable non-"tech" roles.

36.    Amazon also pays women less than men within the same Job Level and even within the same Job Code.

37.    Under its job classification system, Amazon also designates certain employees as "managers" and others as "independent contributors," and Amazon pays individuals classified as

CLASS ACTION COMPLAINT                    Page 7                    OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

"managers" more. These labels do not correspond to whether an employee supervises others, as "independent contributors" regularly have numerous direct reports and therefore perform similar work as those labeled "managers." Amazon regularly assigns women to lower-paying "independent contributor" roles and men to higher-paying "manager" roles, despite them performing similar work.

38. Assigning women to jobs with "independent contributor" labels likewise limits their career advancement opportunities, including their opportunities for promotion.

39. At all relevant times, Amazon has known or should have known of the pay disparity between women and comparable men, yet Amazon has taken no action to remedy the unequal compensation between women and similarly situated men. Amazon's failure to pay women the same compensation paid to men for substantially similar work has been and is willful.

**B.     Under Amazon's Unitary Operations, Centralized Decisionmaking, and Uniform Policies, Amazon Employees Frequently Transfer Between Job Families, Teams, and Job Codes.**

40. Amazon is among the world's largest e-commerce and technology companies and is continually expanding into new sectors.

41. Since its inception in 1997, and especially as the company has grown and expanded, Amazon prides itself on instilling a common culture and set of guiding principles for every employee, regardless of their team or location. As a result, Amazon employs a highly scaled and focused hierarchy with rigid top-down principles that govern its job architecture and compensation.

42. The company has a strong, consistent culture centered on Amazon's "16 Leadership Principles," described by former Amazon employee Kristi Coulter as the "Amazon Commandments: a set of values and behaviors that show up everywhere from hiring loops to

CLASS ACTION COMPLAINT                    Page 8                    OUTTEN & GOLDEN LLP
                                                                   1999 Harrison Street, Suite 1500
                                                                   Oakland, CA 94612
                                                                   (415) 638-8800

performance reviews to routine team meetings." Kristi Coulter, *Exit Interview*, 17 (2023). The Leadership Principles drive Amazon's corporate strategy and culture, including its philosophy of managing the employee experience, and exemplify Amazon's emphasis on policies and practices that maximize its ability to constantly scale up.

43.    That uniform approach has resulted in strong consistency in employment practices, achieved in part through standard corporate-wide structures, policies, and practices. For example, Amazon has built and maintains centralized human resources ("HR") structures and processes. Thus, Amazon's job architecture, hiring and onboarding processes, compensation determinations, performance measurement systems, and promotion decisions are highly standardized. The consistency also carries through to day-to-day work through the Leadership Principles. Throughout the company, regardless of a given employee's Job Code, team, level, organizational location, or geographic location, Amazon expects each employee to exemplify and abide by—and analyzes their performance based on—these 16 Leadership Principles.

44.    Amazon also employs a highly structured and systematized work environment that allows employees to work interchangeably and frequently move between teams. Kristi Coulter calls this movement of interchangeable employees "Amazon Boggle." *Exit Interview* at 108. Amazon maintains a common internal transfer process to transfer employees from one role or team to another, which often involves changing from one Job Code to a different Job Code, and can involve transferring from a non-"tech"-labeled position to a "tech"-labeled position. There are many Job Families within Amazon within which employees frequently and recurrently transfer from one Job Family to another because the Job Families are similar and the jobs under either Job Family are substantially similar.

45.    Teams commonly include employees from multiple different cities, and even different countries.

46. Amazon's job postings also reflect the cohesive, cross-geographic nature of Amazon's workplace. Amazon postings often explicitly note that the role can be fulfilled out of any of multiple offices.

47. Similarly, employees' primary HR contacts are frequently located in different states from the employees.

48. Amazon's 2023 10-K Report filed with the SEC reports employment information for the whole company, on behalf of all subsidiaries, without distinguishing between them.[1] Specifically, Amazon states that "[a]s of December 31, 2023, we employed approximately 1,525,000 full-time and part-time employees."[2] Upon information and belief, there are no 10-K Reports for any individual Amazon subsidiary or entity.

49. Similarly, Amazon describes itself to the EEOC in its yearly EEO-1 Employer Information Reports as a unitary company, with "Amazon.com, Inc." as the sole employer of record.[3] Amazon's 2021 EEO-1 submission to the EEOC lists 1,120,602 total workers, of whom 761,568 are "laborers & helpers," 65,123 are listed in one of two categories of "officials & mgrs," 121,182 are "professionals," and the rest are listed in various other categories. Upon information and belief, Amazon does not create or submit separate EEO-1 Reports for its subsidiaries or any other entity.

50. On its website, Amazon consistently describes itself as a unitary company. For example, on a web page titled "Our workforce data," Amazon states, "we will continue to strive

---

[1]    *See* Form 10-K – Amazon.com, Inc., U.S. Securities & Exchange Comm'n (Feb. 1, 2024) at 4, https://d18rn0p25nwr6d.cloudfront.net/CIK-0001018724/c7c14359-36fa-40c3-b3ca-5bf7f3fa0b96.pdf (last accessed Feb. 8, 2024).

[2]    *Id.* at 42.

[3]    *See* 2021 EEO-1 Report, https://assets.aboutamazon.com/ff/dc/30bf8e3d41c7b250651f337a29c7/2021-amazon-consolidated-eeo-1-report-2p.pdf (last accessed Feb. 8, 2024).

CLASS ACTION COMPLAINT                    Page 10                    OUTTEN & GOLDEN LLP
                                                                     1999 Harrison Street, Suite 1500
                                                                     Oakland, CA 94612
                                                                     (415) 638-8800

for better representation across our *company*," followed by several graphs describing demographics for the whole company, without distinguishing between subsidiaries, geographic locations within the United States, or departments.[4]

### C.    Amazon Maintains Common Decisionmaking and Uniform Policies as to Hiring and Promotions.

51.    Amazon has a centralized HR department which implements and dispenses all of Amazon's personnel processes, including hiring, Job Code and Level assignments, promotion, and job evaluations, all of which impact Amazon employees' compensation.

52.    Amazon ensures that each corporate employee goes through a hyper-standardized hiring process, regardless of the role, to determine if the employee is a good fit, not only for a specific role, but also for Amazon's culture.

53.    Candidates who make it past Amazon's initial screening complete a "full hiring loop," during which they participate in multiple interviews with panels of Amazon employees.

54.    For every hiring loop, Amazon assigns a "Bar Raiser," which is a "trained and trusted interviewer who sits in on meetings to evaluate candidates across the company for 'culture fit.'"  Kristi Coulter, *Exit Interview*, at 148.  The Bar Raiser sits in on every interview in the hiring loop, contributes feedback on the candidate, and joins the subsequent decisionmaking conversations.  Bar Raisers are designed to play a two-part role: (a) to ensure the candidate meets the baseline qualifications for the Job Family and Level, and (b) to ensure the candidate is a good "culture fit" for Amazon.  To ensure standardization in the company, Amazon generally requires that Bar Raisers come from outside the team doing the hiring.  Amazon puts Bar Raisers through special training to train them for the role.  Amazon relies on each Bar Raiser to participate in

---

[4]    *Our workforce data*, Amazon.com, https://www.aboutamazon.com/news/workplace/our-workforce-data (last accessed Feb. 8, 2024) (emphasis added).

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

hundreds of hiring loops.[5]

55. In addition to the careful use of Bar Raisers, Amazon requires *all* employees who participate in interview loops to go through the same mandatory training called Making Great Hiring Decisions ("MGHD"). Through the MGHD training, Amazon teaches employees its unique process for interview loops—down to the exact questions interviews must ask. Amazon instructs interviewers to draw their questions from the Amazon Interview Question Bank ("AIQB"), with specially designed questions intended to make sure, regardless of the particular job role, team, or location, that the employee is the right "fit."

56. The heart of every question asked in the hiring loop—and the metrics by which the candidates are judged—is Amazon's "16 Leadership Principles." Amazon credits "employ[ing] Amazon's leadership Principles every day" as a key to its success. Daniel Slater, the Worldwide Head of Culture of Innovation at Amazon Web Services describes it as the "primary reason" why, "as the company scaled," Amazon has retained its ability to "maintain [its] culture of innovation."[6] Amazon expects employees at all levels of the company to consciously embody these Principles on a day-to-day basis. The Principles are a "common vernacular" across the entire company.[7] The Principles are "embedded in [Amazon's] hiring processes: we give them to candidates prior to their interview, and evaluate their examples by how their decisionmaking and problem-solving demonstrates different Leadership Principles."[8]

57. Amazon generally assigns each interviewer on a given loop one or two specific

---

[5]    Kristi Coulter, *Exit Interview* at 148 (2023).

[6]    Daniel Slater, *Leading and Innovating with Leadership Principles*, https://aws.amazon.com/executive-insights/content/leading-and-innovating-with-leadership-principles/ (last accessed Jan. 31, 2024).

[7]    *Id.*

[8]    *Id.*

CLASS ACTION COMPLAINT                    Page 12                    OUTTEN & GOLDEN LLP
                                                                    1999 Harrison Street, Suite 1500
                                                                    Oakland, CA 94612
                                                                    (415) 638-8800

Leadership Principles as their focus.  Their role in the interview is only to ask candidates about that specific Principle and to provide written feedback on how the candidate responds.

58.     Amazon consistently uses this uniform hiring process for corporate applicants and evaluates their candidacy by the same metrics.

### D.     Amazon Maintains Common Decisionmaking and Uniform Policies as to Its Job Architecture.

#### 1.     The Job Architecture

59.     As described below, Amazon has created a rigid job architecture intended to provide a framework for the organization of its employees.  Each Job Code (the work an employee functionally performs) falls within a larger Job Family (comprised of multiple related job codes).  Separately, individuals are assigned a Job Level that is intended to reflect their education, experience, and skills.  The intersection of an individual's Job Level and Job Code determines their compensation.  Amazon uses a single set of job coding/leveling structures throughout the company, across its locations, referred to as the "Leveling Guidelines."  Whether an employee is in Washington or elsewhere, the same job architecture/Leveling Guidelines apply.

#### 2.     Job Families

60.     Amazon places each employee within a "Job Family" based on their job responsibilities.  Employees frequently transfer between Job Families, as many Job Families share related work and responsibilities.  Employees assigned to different Job Families regularly work on the same teams and perform similar work.

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

### 3.    Job Levels

61.    Amazon's HR, in conjunction with Bar Raisers, assigns each corporate salaried employee a Job Level from Level 4 (at the bottom) to Level 12 (at the top) based on a centralized rubric that defines the characteristic of each level in connection with a given Job Code.

62.    Amazon strictly controls Job Level assignments.  Managers do not have discretion to change an employee's Job Level.  If a Manager wishes to change the Job Level for a direct report within the first six months of employment, they must do so by appealing to the Bar Raiser who had been on the employee's hiring panel.  Otherwise, a Manager has to wait at least one year and then put the employee up for promotion in order to raise their level.

### 4.    Job Codes

63.    Amazon assigns each employee a "Job Code," which indicates the work to be performed and job qualifications, based on a range of Job Codes available for the specific Job Family.

64.    Amazon's HR, in conjunction with Bar Raisers, assign Job Codes based on Amazon's Leveling Guidelines.

65.    Managers do not have discretion to change an employee's Job Code.  If managers believe a Job Code is incorrect, they must ask Amazon's HR to conduct a Job Code review.

66.    Amazon maintains company-wide Leveling Guidelines governing both Job Levels and Job Codes.

67.    As with Job Families, employees frequently transfer between Job Codes, as many Job Codes share related work and responsibilities.  Employees assigned to different Job Codes regularly work on the same teams and perform similar work.

68.    Amazon labels some Job Codes as "tech" and others as "non-tech," and typically pays "tech"-labeled Job Codes more than "non-tech"-labeled Job Codes.

CLASS ACTION COMPLAINT                       Page 14                       OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

69.    Once an employee begins working at the company, it is rare for Amazon to change an employee's Job Code, even if (as regularly occurs) the employee's job duties grow and evolve or the employee's organization is reorganized to add additional Job Codes. Instead, employees typically change Job Codes through an internal job transfer pursuant to Amazon's common internal transfer process or through a promotion. When a manager changes an employee's Job Code, it requires both HR and the employee's skip-level manager to sign off.

70.    As a result, upon information and belief, employees within one or more related Job Families regularly perform substantially similar work to each other even if they have different Job Codes.

### E.    Amazon Maintains Common Decisionmaking and Uniform Policies as to Its Compensation.

71.    Across the company, Amazon employees' primary compensation is a combination of a base salary and stock grants (and, for their first two years of employment only, cash bonuses), which are directly based on the employee's Job Level and Job Code.

72.    At hire, compensation is determined based on a range associated with the Job Code and Job Level assigned by Amazon's HR. Later, Amazon determines employees' compensation using a single automated algorithm. An employee's Job Level, Job Family, and performance rating (discussed further below) are input into the algorithm, and the algorithm produces a recommended compensation. Although managers can lobby HR to request a departure from the algorithm's recommendation, it is unusual for Amazon to authorize any such changes.

CLASS ACTION COMPLAINT                    Page 15                    OUTTEN & GOLDEN LLP
                                                                    1999 Harrison Street, Suite 1500
                                                                    Oakland, CA 94612
                                                                    (415) 638-8800

**F.**    **Amamzon Maintains Common Promotion Processes, Including Standardized Metrics, Application Processes, and Timelines.**

73.    Amazon also maintains a uniform promotion process applicable to all employees. Within the Leveling Guidelines, Amazon provides metrics for what should be expected of employees at each Job Level, as well as separate Job Code-specific metrics for each Job Level. Amazon uses both metrics to guide promotion decisions.

74.    There are two promotion cycles each year for levels L7-L10 and four promotion cycles for levels L4-L6, following predetermined timelines.  Amazon requires managers to submit a standardized promotion document, following templates and guidance available for all employees.

75.    The promotion document includes the employee and/or manager's written self-assessment of their "skills and experience against the official HR requirements for" the Job Level the employee seeks. *Exit Interview* at 216.  "Amazon promotion proposals are dense, data-packed documents." *Id.*

76.    Amazon does not allow employees to be promoted outside of the bi-annual or quarterly promotion process.  That applies to internal transfers as well.  Amazon does not afford discretion to its managers to promote employees.  Employees cannot be promoted up a level by being offered a new role through an internal job posting for an open position at a higher level. Thus, for example, if a Level 6 employee applies for and is offered a job scoped to be Level 7 on a different team, the employee can accept the role and change teams, but they will not be promoted to or paid as a Level 7, even if they perform all of the Level 7 job duties.  If the employee wants the promotion to Level 7, they must seek it through the standardized promotion process.  Amazon requires an employee to have been in their current role for at least one, often two, years before they are permitted to seek a promotion to a higher level.

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

### G.    Amazon Maintains Common Evaluation Processes, Including Forced Ranking, and "Unregretted Attrition Goals" to Meet Termination Quotas.

77.    Amazon uses the same processes for employee evaluations and promotion decisions nationwide, regardless of location or organization.

78.    During the annual performance evaluation cycle, Amazon gives each employee two numerical scores: (a) a rating of performance from 1 to 7, and (b) a rating of potential from 1 to 4.  Higher numbers are better.  Amazon then combines those two scores to determine one of five final ratings: (a) "Least Effective," (b) "Highly Valued 1," (c) "Highly Valued 2," (d) "Highly Valued 3," and (e) "Top Tier."

79.    Amazon imposes a forced ranking system that falls along a bell curve, constraining managers' discretion in the review process.  Thus, a manager cannot give all their direct reports the highest score, and the manager must in fact give some employees the lowest score.  This is true across all teams and locations.

80.    Low performance scores have a lasting impact on employees' compensation and eligibility for promotion.  For example, Amazon instructs managers to put any employees who receive a Least Effective rating into the "Focus" program.  Employees in Focus are not eligible for raises or stock grants.  Further, Focus is typically a precursor to Pivot, which is the equivalent of a Performance Improvement Plan (PIP)—and often, to being fired.  The forced ranking system and the consequences of low ratings help Amazon achieve its self-described "unregretted attrition goal."  That goal is, effectively, a quota requiring a certain number of employees to be fired every year companywide, which Amazon does not "regret."

81.    Upon information and belief, Amazon's common practice of paying women less than men for similar work cannot be explained by differences in performance review ratings, as can be demonstrated through common data analysis.

CLASS ACTION COMPLAINT                    Page 17                    OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

## V.    <u>CLASS ACTION ALLEGATIONS</u>

82.    Plaintiffs assert claims under the EPOA on behalf of proposed class pursuant to Federal Rule of Civil Procedure 23.

83.    Plaintiffs seek to represent the Washington Class.

84.    All requirements for class certification are met by the proposed Class.

85.    <u>Numerosity</u>.  Class Members are so numerous that joinder of all members is impracticable.  Fed. R. Civ. P. 23(a)(1).  Although Plaintiffs do not know the precise number of Class Members, the number in each Class is far greater than can be feasibly addressed through joinder.

86.    <u>Commonality</u>.  There are questions of law and fact common to the Class, and these questions predominate over any questions affecting only individual members.  Common questions include: (a) whether Amazon pays its female corporate employees less than male employees performing substantially similar work; (b) whether Amazon limits Washington-based female corporate employees' career opportunities based on gender; (c) whether Amazon's policies and practices violate the EPOA; and (d) whether compensatory damages, punitive damages, monetary equitable remedies, injunctive relief, or other relief is warranted.

87.    <u>Typicality</u>.  Plaintiffs' claims are typical of the claims of the Class they seek to represent.

88.    <u>Adequacy</u>.  Plaintiffs will fairly and adequately represent and protect the interests of Class Members.  Plaintiffs have retained counsel competent and experienced in complex class actions, employment discrimination litigation, and the intersection thereof.

89.    <u>Rule 23(b)(2) certification</u>.  Class certification is appropriate under Rule 23(b)(2) because Amazon has acted and/or refused to act on grounds generally applicable to Class Members, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the

CLASS ACTION COMPLAINT                    Page 18                    OUTTEN & GOLDEN LLP

Class Members they seek to represent.  The Class Members are entitled to injunctive relief to end Amazon's common, uniform, unfair, and discriminatory policies and practices.

90.    Predominance and Superiority (Rule 23(b)(3) only).  Class certification under Rule 23(b)(3) is also appropriate because common questions of fact and law predominate over questions affecting only individual Class Members, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.  The Class Members have been damaged and are entitled to recovery as a result of Amazon's common, uniform, unfair, and discriminatory policies and practices.  Calculation of damages based on Amazon's computerized data will be more efficiently performed on a class-wide than an individual-by-individual basis.  The propriety and amount of punitive damages will be based on Amazon's conduct, making these issues common to the Class.

## VI.    PLAINTIFFS' INDIVIDUAL FACTUAL ALLEGATIONS

### A.    Plaintiff Cisneroz's Factual Allegations

91.    Plaintiff Cisneroz's experiences, detailed below, both (a) illustrate Amazon's unlawful treatment in determining the terms and conditions of employment, including setting compensation and determining Job Codes, and (b) support her individual EPA and EPOA claims.

#### 1.    Background

92.    Amy Cisneroz is an accomplished professional with over 15 years of experience working in product management at major corporations.

93.    She holds a bachelor's of business administration degree in finance from Northeastern State University.

#### 2.    Amazon Paid Plaintiff Cisneroz Less Than Her Male Comparators Who Performed Substantially Similar Work

94.    In May 2022, Plaintiff Cisneroz joined Amazon as an L7 Principal Product Manager in its Fashion and Personalization organization.  At the time, Amazon paid Plaintiff

Cisneroz a salary of approximately $205,000. Amazon also awarded her a sign-on bonus that was paid out in monthly increments over a two-year period, in addition to an equity award that vested over time.

95.    Amazon hired Plaintiff Cisneroz as a non-"tech"-classified Principal Product Manager. After Plaintiff Cisneroz started at the company, she learned that Amazon also has a "tech"-classified L7 Principal Product Manager job code.

96.    Through conversations with her colleagues, Plaintiff Cisneroz learned that Amazon pays "tech"-classified Principal Product Managers more than non-"tech" Principal Product Managers (like herself), even though she observed that they performed the same or similar job duties and possessed comparable qualifications.

97.    For example, Plaintiff Cisneroz regularly observed that J.P., a Seattle-based employee on her team, performed substantially similar work to her, including creating product roadmaps, and planning and designating workflows for the product teams. Plaintiff Cisneroz understands J.P. holds similar credentials as her as well. Despite this, Amazon classified J.P.'s role as an L7 Principal Product Manager-Tech.

98.    In or around October 2022, J.P. took a sabbatical from Amazon. Plaintiff Cisneroz was instructed to take over all J.P.'s projects while he was on leave. Plaintiff managed J.P.'s projects for the remainder of her tenure at Amazon. Running J.P.'s projects did not require any new or different responsibilities or skills compared to Plaintiff's projects.

99.    Despite always performing similar work as J.P., and for most of her tenure at Amazon, performing his exact job duties, Amazon at all times kept Plaintiff Cisneroz in a non-"tech" position.

100.    As a result of Amazon's Compensation Practices, including not classifying Plaintiff Cisneroz's role as "tech," and Amazon's denial of career advancement opportunities,

Plaintiff Cisneroz understands and believes that her total compensation was substantially less than that of men performing similar work, such as J.P.'s.

101. Amazon terminated Plaintiff Cisneroz's employment in October 2024 without ever correcting the gender-based pay disparity.

### B. Plaintiff Srinivas's Factual Allegations

102. Plaintiff Srinivas's experiences, detailed below, both (a) illustrate Amazon's unlawful treatment in determining the terms and conditions of employment, including setting compensation and determining Job Codes, and (b) support her individual EPA and EPOA claims.

### 1. Background

103. Gayatri Srinivas is an accomplished professional with over 20 years of experience working as a technical writer at tech companies.

104. She holds a bachelor's degree in English literature from University of Rajasthan and a certificate in communications from Bellevue Community College.

### 2. Amazon Paid Plaintiff Srinivas Less Than Her Male Comparators Who Performed Substantially Similar Work

105. In 2011, Plaintiff Srinivas joined Amazon as an L5 Technical Writer II in Amazon Web Services ("AWS"). At the time, Amazon paid Plaintiff Srinivas a salary of approximately $91,000.

106. In 2015, Plaintiff Srinivas moved to the Distributed Computing Platform team, housed within Amazon.com Services. Her compensation and job duties, however, did not change. In 2016, Plaintiff Srinivas was promoted to an L6 Senior Technical Writer.

107. In or around 2021, Plaintiff Srinivas moved back to a team within AWS. Her job duties, however, did not change as a result of the move.

108. Earlier in her career at Amazon, in 2013 or 2014, Plaintiff Srinivas spoke with a male colleague who held the same job title as her about compensation because she believed hers

CLASS ACTION COMPLAINT                    Page 21                    OUTTEN & GOLDEN LLP

was below industry standard, and he informed her that his compensation met industry standard.

109.    In or around 2022 or 2023, Plaintiff Srinivas's manager informed her that her salary was below the industry standard based on her level and experience.  Amazon thus increased Plaintiff Srinivas's salary to approximately $160,000.  Plaintiff Srinivas understands from this conversation and her prior knowledge of her male colleague's compensation that she was being paid less than other male L6 Senior Technical Writers who performed the same work as her.

110.    Further, even with that increase, throughout her tenure at Amazon, Plaintiff Srinivas understands that her salary and target compensation total never approached the higher end for the compensation band for employees in her job code, despite her extensive prior experience and the fact that she was the longest-tenured Technical Writer at AWS.

111.    Upon information and belief, Amazon paid male employees performing similar work, including in the same job code, more than Plaintiff Srinivas.  As a result of Amazon's Compensation Practices and Amazon's denial of career advancement opportunities, Plaintiff Srinivas understands and believes that her total compensation was substantially less than that of men performing similar work.

112.    Plaintiff Srinivas left Amazon in March 2025.  Prior to her departure, Amazon never fully corrected the gender-based pay disparity that existed throughout her tenure at the company.

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

## VII.    CAUSES OF ACTION

### FIRST CLAIM
### VIOLATIONS OF WASHINGTON EQUAL PAY AND OPPORTUNITIES ACT, RCW 49.58.010 *et seq.*
### (on behalf of Plaintiffs Individually and on Behalf of the Washington Class)

113.    Plaintiffs and the Washington Class incorporate by reference paragraphs 1 through 112 above.

114.    This claim is brought by Plaintiffs on behalf of themselves and the Washington Pay Class.

115.    Pursuant to the Washington Equal Pay and Opportunities Act, RCW 49.58 *et seq.*, it is unlawful for an employer to discriminate in any way by providing compensation based on gender.  Amazon has paid Plaintiffs and the Washington Class less than similar male employees for the performance of work requiring similar skill, effort, and responsibility, and performed under similar working conditions, and has provided fewer and less favorable career advancement opportunities to Plaintiffs and the Washington Class than men due to their gender.

### SECOND CLAIM
### VIOLATIONS OF EQUAL PAY ACT, 29 U.S.C. § 206 *et seq.*
### (on behalf of Plaintiffs individually)

116.    Plaintiffs incorporate by reference paragraphs 1 through 112 above.

117.    This claim is brought by Plaintiffs on behalf of themselves.

118.    Defendant discriminated against Plaintiffs in violation of the EPA, 29 U.S.C. § 206 *et seq.*, by paying them less than men who performed equal work requiring equal skill, effort, and responsibility, and which was performed under similar working conditions.

119.    The EPA makes it unlawful for an employer to discriminate between employees on the basis of sex by paying wages to employees at a rate less than the rate paid to employees of the opposite sex for equal work.

CLASS ACTION COMPLAINT                    Page 23                    OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

120. Amazon subjected Plaintiffs to discriminatory leveling and compensation policies that resulted in the underpayment of salary, bonuses, and equity awards to Plaintiffs in violation of the EPA.

121. Amazon caused and contributed to the underpayment of Plaintiffs relative to men who were performing substantially equal work.

122. As a result of Amazon's conduct, Plaintiffs suffered harm, including but not limited to lost earnings, lost benefits, other financial loss, and non-economic damages.

123. The foregoing conduct, as alleged, constitutes a willful violation of the EPA within the meaning of 29 U.S.C. § 255(a).

## VIII. **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray for judgment against Defendant and relief as follows:

    A.    Certification of the case as a class action on behalf of the proposed Class, designation of Plaintiffs as representatives of the Class, and designation of Plaintiffs' counsel of record as Class Counsel;

    B.    Trial by jury;

    C.    Back pay with prejudgment interest, in amounts to be determined at trial, and other relief necessary to make Plaintiffs, and Class Members whole for past and future pecuniary losses resulting from the unlawful employment practices described;

    D.    Front pay, in amounts to be determined at trial, and other relief necessary to make Plaintiffs whole for pecuniary losses resulting from the unlawful employment practices described;

    E.    Damages for any and all forms of emotional distress Plaintiffs, and Class Members have experienced, including but not limited to humiliation, loss

CLASS ACTION COMPLAINT        Page 24

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

of enjoyment of life, pain and suffering, personal indignity, embarrassment, fear, sadness, anger, anxiety, and anguish, in amounts to be established at trial;

F.    Double damages or exemplary damages for EPOA violations pursuant to RCW 49.58.070;

G.    Liquidated damages;

H.    Pre- and post- judgment interest to the extent authorized by law;

I.    Any and all other actual damages, costs, and expenses;

J.    Service payments to the representatives of the Class;

K.    Reasonable attorney's fees and costs;

L.    Monetary relief for any adverse tax consequences of their awards; and,

M.    Any and all such other relief as the Court deems just and proper.

OUTTEN & GOLDEN LLP
1999 Harrison Street, Suite 1500
Oakland, CA 94612
(415) 638-8800

DATED this 8th day of April, 2026.

FRANK FREED SUBIT & THOMAS LLP


By: /s/ Michael C. Subit
    Michael C. Subit, ESBA No. 29189
    705 Second Avenue, Suite 1200
    Seattle Washington 98104
    Telephone: (206) 682-6711
    msubit@frankfreed.com

OUTTEN & GOLDEN LLP

    Jahan C. Sagafi*
    Hannah C. Meropol*
    Sophia Jane Balkoski*
    1999 Harrison Street, Suite 1500
    Oakland, CA 94612
    San Francisco, CA 94111
    Telephone: (415) 638-8800
    jsagafi@outtengolden.com
    hmeropol@outtengolden.com
    jbalkoski@outtengolden.com

    Adam T. Klein*
    Cara E. Greene*
    Michael C. Danna*
    Zarka D. Souza*
    685 3rd Ave 25th Floor
    New York, NY 10017
    Telephone: (212) 209-0675
    aklein@outtengolden.com
    cgreene@outtengolden.com
    mdanna@outtengolden.com
    zdsouza@outtengolden.com

    Jenny Yang*
    Jennifer Davidson*
    Jon Ostrowsky*
    1225 New York Ave NW, Suite 1200B
    Washington, DC 20005
    Telephone: (202) 918-5476
    jyang@outtengolden.com
    jdavison@outtengolden.com
    jostrowsky@outtengolden.com

EQUAL RIGHTS ADVOCATES

    Noreen Farrell*
    Catherine Bendor*

CLASS ACTION COMPLAINT         Page 26          OUTTEN & GOLDEN LLP
                                              1999 Harrison Street, Suite 1500
                                                Oakland, CA 94612
                                                    (415) 638-8800

Cassidy Clark*
611 Mission St, 4th Floor
San Francisco, CA 94105
Mailing: 150 Sutter St, P.O. Box #87
San Francisco, CA 94104
Telephone: (415) 471-1470
nfarrell@equalrights.org
cbendor@equalrights.org
cclark@equalrights.org

*Attorneys for Plaintiffs and the Putative
Class Members*

*pro hac vice application forthcoming*